# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Antonio Beale,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | CV-09-249-TUC-DCB-DTF<br><br>**REPORT & RECOMMENDATION** |

    Petitioner, Aaron Antonio Beale, who is presently confined in the Huerfano County Correctional Center in Walsenberg, Colorado, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Ferraro for a Report and Recommendation. Before the Court are the Petition for Writ of Habeas Corpus (Dkt. 1) and Respondents' Answer to Petition for Writ of Habeas Corpus (Dkt. 8). Petitioner did not file a Reply. The Magistrate Judge recommends that the District Court, after independent review, deny the Petition.

## **FACTUAL AND PROCEDURAL BACKGROUND**

    On May 26, 2005, police found several items of contraband in Petitioner's car, which led to him being charged with possession and transportation of a dangerous drug for sale, possession of a deadly weapon during a felony and by a prohibited possessor, and possession of drug paraphernalia (CR 2005-667). (Dkt. 8, Ex. A.) The State offered a plea agreement in which Petitioner would be sentenced to a total of 9.25 years imprisonment for this case and

a prior unrelated case (CR 2004-391).[1] (Dkt. 8, Ex. H at 18.) However, at the change of plea hearing on January 24, 2006, Petitioner was unable to provide a factual basis for one charge in the plea agreement: possession of a deadly weapon by a prohibited possessor. (Dkt. 8, Ex. C, Ex. H at 28-29.) After the prosecutor explained the concept of constructive possession, Petitioner indicated that he still did not understand. (Dkt. 8, Ex. C, Ex. I at 16.) The court recessed to allow Petitioner to consult with his attorney. (Dkt. 8, Ex. C, Ex. E at 29, Ex. I at 16.) When proceedings resumed, Petitioner was still unable to provide a sufficient factual basis for the plea. (Dkt. 8, Ex. C, Ex. H at 29-30, Ex. I at 17.) The trial court advised Petitioner that he could re-schedule his change of plea hearing for January 31, 2006, and set a trial date of February 8, 2006, for CR 2004-391. (Dkt. 8, Ex. C.) When trial counsel indicated a scheduling conflict with the morning of January 31, 2006, the trial court expressed its willingness to find another time on January 31 to schedule a hearing if Petitioner wanted to enter a plea. (*Id*.) The trial court concluded "'[w]e either will or we won't, and Mr. Beale, I will either see you on the 31st or the 8th of February.' At that point it was the Court's understanding that the matter would be tried if no plea was entered on January 31, 2006." (*Id*.)

No change of plea hearing occurred, the State withdrew the plea offer and CR 2004-391 proceeded to trial. (Dkt. 8, Ex. C.) Petitioner attempted to accept the plea agreement on the morning of trial, but the prosecutor had withdrawn the offer. (*Id.*, Ex. G at 5-6.) Petitioner was found guilty of two charges in CR 2004-391 and was sentenced to terms of imprisonment to be served concurrently with the sentences imposed in CR-2005-667. (*Id.* 8, Ex. D at 3-4.)

---

[1] Respondents were not able to locate a copy of the plea agreement initially offered in Petitioner's case, nor were they able to locate the transcript from the January 24, 2006 change of plea hearing. (Dkt. 8 at 2-3 nn.1-2.) The facts regarding Petitioner's change of plea proceedings as stated herein are taken from the minute entries and transcripts from the trial court's consideration of Petitioner's PCR Petition. Some correspondence in the record before this Court suggests that the sentence offered in the plea agreement was 9 years, not 9.25. (Dkt. 8, Ex. G at Exs. C, D.)

Petitioner entered into a plea agreement in CR-2005-667 wherein the sentences would run concurrently to the sentences in CR-2004-391. (Dkt. 8, Ex. D at 3.) Petitioner agreed as part of the plea deal that he would not pursue a special action to enforce the joint plea agreement from CR-2004-391 and CR-2005-667. (*Id.* at 4.) On April 11, 2006, Petitioner was sentenced to a total of fifteen years imprisonment. (Dkt. 8, Ex. F at 5.)

Petitioner filed a petition for post-conviction relief (PCR) pursuant to Arizona Rule of Criminal Procedure 32 encompassing both CR-2004-391 and CR-2005-667. (Dkt. 8, Ex. G.) In his PCR Petition, Petitioner presented two, interrelated claims for relief: (1) trial counsel was ineffective for failing to adequately communicate the terms of the State's first plea offer; and (2) trial counsel was ineffective in advising Petitioner to accept the second plea offer. (*Id.* at 6.) On January 15 and 25, 2008, the trial court held an evidentiary hearing on Petitioner's PCR Petition. (Dkt. 8, Exs. H, I.) On February 14, 2008, the trial court denied the petition. (*Id.*, Ex. J.)

Petitioner filed a petition for review by the Arizona Court of Appeals. In his petition for review, Petitioner presented three claims for relief relevant to CR-2005-667: (1) trial counsel was ineffective with respect to the original plea offer; (2) the PCR court erred in evaluating the second plea agreement; and (3) the trial court abused its discretion by implicitly concluding that the state had not been estopped from withdrawing the plea agreement. (Dkt. 8, Ex. K.) The Court of Appeals denied the petition for review in a memorandum decision filed on February 5, 2009. (*Id.*, Ex. B.)

## DISCUSSION

On April 30, 2009, Petitioner filed the instant Petition for Writ of Habeas Corpus, in which he presents one claim of ineffective assistance of counsel (IAC).

**A.  Exhaustion**

Respondents argue that Petitioner has failed to exhaust his claims because he did not file a petition for review by the Arizona Supreme Court. This argument is without merit.

Respondents' argument arises from the statutory requirement that a petitioner exhaust "the remedies **available** in the courts of the State," 28 U.S.C. § 2254(b)(1)(A) & (c), which

requires giving state courts a "fair opportunity to act," *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). In *Swoopes*, the Ninth Circuit held that, in cases not carrying a life sentence or the death penalty, "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999). Respondents submit that *Swoopes* was incorrectly decided and has been implicitly overruled by more recent case law. (Dkt. 7 at 6.)

In support of their argument, Respondents cite *Baldwin v. Reese*, 541 U.S. 27 (2004), and *O'Sullivan v. Boerckel*. In *Baldwin*, a case appealed from the Ninth Circuit, the Supreme Court addressed the question of what constitutes notice of the federal nature of a claim sufficient to satisfy the fair presentment requirement of exhaustion. In laying the groundwork for its decision, the Supreme Court stated that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." 541 U.S. at 29 (citations omitted).

*Swoopes* was decided on remand to the Ninth Circuit for consideration in light of the Supreme Court's decision in the *O'Sullivan* case. In *Swoopes*, the Ninth Circuit, just like the *Baldwin* court, began by reiterating the general rule stated in *O'Sullivan* that, "in order to satisfy the exhaustion requirement for federal habeas relief, state prisoners must file for discretionary review in a state supreme court when that review is part of ordinary appellate review." *Swoopes*, 196 F.3d at 1009 (citing *O'Sullivan*, 526 U.S. at 843-48). Further, the fact that a state employs a discretionary review system does not, in itself, make state supreme court review "unavailable." *Id.* (citing *O'Sullivan*, 526 U.S. at 848.) The court recognized, however, that the Supreme Court had "acknowledged an exception to the exhaustion requirement," when a State provides that a specific remedy is unavailable. *Id.* (quoting *O'Sullivan*, 526 U.S. at 847).

The Ninth Circuit proceeded to assess Arizona's discretionary review system. The court cited two Arizona cases, *State v. Shattuck*, 140 Ariz. 582, 684 P.2d 154 (1984), and *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989), which made it clear that, "in cases not

carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes*, 196 F.3d at 1010. Thus, the court concluded, "post-conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within the meaning of *O'Sullivan*," and unnecessary to exhaust state remedies. *Id.* There is nothing in *Baldwin* that suggests, implicitly or explicitly, that this analysis is flawed or that the holding has been overruled.

Also strongly suggestive of the continued vitality of *Swoopes* is that the Ninth Circuit continues to cite the case for the very proposition Respondents suggest was overruled. In *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005), the court stated that "[i]n cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Id.* at 998 n.3 (quoting *Swoopes*, 196 F.3d at 1010). At least one other circuit also has cited *Swoopes* for this proposition without questioning its continuing validity. *See Lambert v. Blackwell,* 387 F.3d 210, 233 (3rd Cir. 2004). In light of this analysis, Respondents' argument that the reliability of the holding in *Swoopes* is questionable fails.

**B.    Merits**

In the petition, Petitioner articulates very little detail regarding the facts of his IAC claim; rather, he incorporates the factual basis set forth in the petition for review. The one IAC claim Petitioner properly exhausted by raising it in the PCR petition and the petition for review alleges that counsel was ineffective for failing to adequately communicate the terms of the first plea offer.[2]

**i.    Legal Standard**

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v.*

---

[2] To the extent Petitioner is attempting to raise any other IAC allegations, they were not properly exhausted. *See* 28 U.S.C. §2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989).

*Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially

indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**ii.   The IAC claim is without merit**

Petitioner argues that he received ineffective assistance when his trial counsel failed to adequately communicate the terms of a plea offer (including the element of constructive possession) that would have resolved CR-2004-391 and CR-2005-667, thereby causing him to lose the favorable plea. The governing federal law standard for claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), which recognizes a right to "effective assistance of counsel" arising under the Sixth

Amendment. The *Strickland* standard for ineffective assistance of counsel has two components. A defendant must first demonstrate that counsel's performance was deficient, *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by the Sixth Amendment. 466 U.S. at 687. It requires the defendant to show that counsel's conduct "fell below an objective standard of reasonableness." *Id.* at 687-88. Counsel's performance is strongly presumed to fall within the ambit of reasonable conduct unless petitioner can show otherwise. *Id.* at 689-90. Second, a defendant must show that the mistakes made were "prejudicial to the defense," that is, the mistakes created a "reasonable probability that, but for [the] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Although Petitioner challenged his counsel's performance with respect to the first plea offer in his PCR petition, the PCR court concluded that because Petitioner was not challenging the later plea negotiations or his counsel's conduct with respect to the plea ultimately entered in this case, there was no basis for relief. (Dkt. 8, Ex. J.) In contrast, the court of appeals addressed Petitioner's claim of IAC with respect to the original plea offer and denied relief for the reasons set forth in its opinion addressing CR 2004-391. (*Id.*, Ex. B at 4.) Although neither Petitioner nor Respondents submitted, in this case, the court of appeals decision in CR 2004-391, it is part of the record in Petitioner's federal habeas case challenging his 2004 conviction. Exhibits for Answer, Dkt. 7, Ex. K, *Beale v. Ryan*, No. CV09-248-DCB-DTF (D. Ariz. filed Aug. 3, 2009).

Petitioner did not attempt to rebut any of the state courts' factual findings, therefore, they are presumed correct. 28 U.S.C. § 2254(e)(1). The court of appeals stated that Petitioner admitted the prosecutor had explained constructive possession during the change of plea hearing, and his counsel had reviewed constructive possession with him during recess. Exhibits to Answer, Dkt. 7, Ex. K at 4 (CV09-248). Further, the court noted that trial counsel discussed the plea agreement with Petitioner both the day before and the morning of the change of plea hearing. *Id.* The court of appeals cited both Petitioner's testimony during the evidentiary hearing, that he was reluctant to accept a nine-year prison term, as well

as trial counsel's statement that he had detailed conversations regarding the plea with Petitioner and Petitioner's "main concern" was the amount of prison time he was facing. *Id.*

These factual findings are not objectively unreasonable in light of the state court record. For example, Petitioner testified, at the PCR evidentiary hearing, that trial counsel reviewed each element of each charge with him, and that he had no hesitation about the plea agreement after his counsel reviewed it with him the day before the hearing. (Dkt. 8, Ex. I at 10-11, 15.) At the change of plea hearing, Petitioner told the court that he understood everything in the plea agreement. (*Id.* at 16.) In light of these factual findings, it was objectively reasonable for the court of appeals to conclude that trial counsel's performance regarding the plea offer was not deficient.

**RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends the District Court enter an order DISMISSING the Petition for Writ of Habeas Corpus.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-09-249-TUC-DCB**.

DATED this 5th day of January, 2010.

D. Thomas Ferraro
United States Magistrate Judge